MAY, J.
A hospital appeals a temporary injunction permitting a doctor, for whom reappointment of privileges was denied, to continue to practice at the hospital during the pendency of the doctor’s civil suit against the hospital. The hospital argues the trial court erred in entering the injunction because it is immune from liability under section 395.0191, Florida Statutes (2009).[1] We agree and reverse the temporary injunction.
The doctor was a member of the medical staff at the hospital where he held privileges and credentials to practice medicine for twelve years. The hospital’s medical staff bylaws require its members to apply for reappointment every two years, and to provide accurate information for an evaluation of their competence, character, ethics, and other qualifications.
Applications for reappointment are considered by the medical staffs Recre-dentials Committee [RC] and Medical Executive Committee [MEC], which make recommendations to the hospital’s Board of Trustees. The Board makes the final decision for reappointment after considering the MEC’s recommendation and “such other elements as determined by the governing board.” § 395.0191(4), Fla. Stat. (2009).
In September 2009, the doctor submitted his application for reappointment. The application included the doctor’s authorization for the Board to request information and documents concerning his qualifications.[2] The doctor’s application was forwarded to the RC and MEC for a review of his professional and clinical competence and conduct over the preceding two years.
During the review process, the hospital’s CEO asked the RC and the MEC to investigate serious conduct and quality of care issues concerning the doctor. In one particular letter, the CEO specifically detailed seven major events over the preceding two years, which raised quality of patient care, medical competence, or disruptive behavior issues.
The MEC met on November 23, 2009 to consider the issues outlined in the letter. The MEC either dismissed or disregarded the events as being outside the review period, inconsequential, or resolved. It voted to recommend the doctor for reappointment at a later meeting.
The Board met on December 9, 2009 to consider the doctor’s application, and invited the doctor and his attorney to attend. Both appeared at the meeting where the hospital’s attorneys gave a power point presentation regarding the doctor’s appli *1029 cation. The doctor was afforded an opportunity to address the Board, which he did. The Board then voted to deny the application for reappointment.
The doctor’s attorney requested an opportunity to rebut the allegations, and to be given a copy of the meeting transcript, power point presentation, and any other documents or evidence presented. He also requested that the doctor’s privileges be extended for sixty days to convene a special board meeting where the doctor could present testimony to rebut the allegations against him.
The Board agreed to provide the doctor with all materials requested, but declined to set a special meeting. It offered the doctor an opportunity to submit a written response to the Board’s concerns along with any written statements of witnesses supporting his position. The Board reminded the doctor of the opportunity for a formal appellate hearing under the Board’s “Fair Hearing and Appellate Review Plan” if his written response was unsuccessful. That process automatically continued medical staff privileges until the Board’s decision became final. Instead of filing a written response or proceeding to the formal appellate hearing, the doctor filed this action for injunctive relief.
The court held an evidentiary hearing on the doctor’s motion for temporary injunction. The doctor argued he was denied reappointment in retaliation for his ongoing opposition to the hospital administration. The president of the hospital’s medical staff, and Board member, testified on behalf of the doctor. Another Board member testified that the Board had reviewed the MEC’s recommendation and considered the same issues that had been referred to the MEC. He further testified that the Board’s vote was based on concerns for the quality of care at the hospital, and was not related to any extrinsic issue concerning the doctor’s opposition to hospital administration.
The trial court granted the temporary injunction on December 30, 2009. The hospital filed this appeal.
Our standard of review of a temporary injunction is mixed. “To the extent the trial court’s order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review.” Foreclosure FreeSearch, Inc. v. Sullivan, 12 So.3d 771, 774 (Fla. 4th DCA 2009). Because we address a legal issue, our review is de novo.
The hospital argues that section 395.0191, Florida Statutes (2009) provides the hospital with immunity from suit when the claim arises out of the appointment or reappointment process in the absence of an allegation of intentional fraud. According to the hospital, because the doctor failed to allege intentional fraud with particularity, he failed to overcome the immunity afforded by the statute.
The doctor responds that section 395.0191 is inapplicable to his claim because it is limited to the initial appointment, not the reappointment process, which is controlled by the Medical Staff Bylaws. He suggests that once a physician becomes a member of the staff, the bylaws govern the relationship between the doctor and the hospital, not the statute. We disagree with the doctor.
Section 395.0191 provides certain privileges and protections for the management of hospital personnel.
(4) Nothing herein shall restrict in any way the authority of the medical staff of a licensed facility to review for approval or disapproval all applications for appointment and reappointment to all categories of staff and to make recommendations on each applicant to the *1030 governing board, including the delineation of privileges to be granted in each case.... The applicant’s eligibility for staff membership or clinical privileges shall be determined by the applicant’s background, experience, health, training, and demonstrated competency; the applicant’s adherence to applicable professional ethics; the applicant’s reputation; and the applicant’s ability to work with others and by such other elements as determined by the governing board, consistent with this part.
[[Image here]]
(7) There shall be no monetary liability on the part of, and no cause of action for injunctive relief or damages shall arise against, any licensed facility, its governing board or governing board members, medical staff, or disciplinary board or against its agents, investigators, witnesses, or employees, or against any other person, for any action arising out of or related to carrying out the provisions of this section, absent intentional fraud.
§ 395.0191, Fla. Stat. (2009) (emphasis added). Subsection (4) describes the authority of the medical staff and Board over the appointment and reappointment process. Subsection (7) provides a broad grant of immunity against monetary liability or injunctive relief “absent intentional fraud.” Id.
To avoid the immunity protection, the statute “places a burden on the plaintiff to plead extrinsic evidence before authorizing a lawsuit in which such evidence could be discovered.” Dhaduvai v. Belsito, 663 So.2d 1356, 1357 (Fla. 2d DCA 1995). And, like any allegation of fraud, it must be pled with particularity. Id.
Here, the doctor’s verified complaint for injunctive relief alleged an “action arising out of or related to” the medical staff reappointment process, governed by section 395.0191. Although the doctor generally alleged the Board “arbitrarily, capriciously, fraudulently, and maliciously denied” his application, the doctor did not specifically allege or offer any evidence of “intentional fraud” sufficient to overcome the immunity provided by the statute. See, e.g., Feldman v. Glucroft, 580 So.2d 866, 867 (Fla. 3d DCA 1991) (finding allegations that the defendant opposed a candidate’s application “arbitrarily and capriciously” and “without good cause” insufficient to overcome statutory immunity). The verified complaint contained mere conclusory allegations, devoid of the requisite specificity. Absent specific allegations of intentional fraud, section 395.0191’s immunity protects the hospital.
Nevertheless, the doctor argues that the statutory immunity provided by section 395.0191 is limited to initial appointment decisions. Once appointed, the doctor suggests that the contractual relationship between a physician and the hospital is governed by the bylaws and not by the statute. To support his argument, the doctor relies on two sentences of our twenty-three page opinion in Lawnwood Medical Center, Inc. v. Sadow, 43 So.3d 710 (Fla. 4th DCA 2010).
There, we stated that “[t]he immunity of § 395.0191(7) is not a broad, general grant immunizing every kind of hospital liability after granting clinical privileges. The plain text confines its immunity only to ‘action[s] arising out of or related to carrying out the provisions of this section.’ ” Sadow, 43 So.3d at 721 (emphasis omitted). This general statement does not support the doctor’s argument.
Our comment in Sadow cannot, and should not, be read as any limitation on the plain language of section 395.0191. In fact, Sadow involved claims for breach of *1031 contract and defamation. We specifically found the doctor had not alleged any violation arising out of the appointment statute. Id. at 722. For this reason, we found the allegations in Sadow fell outside the immunity provided by section 395.0191(7).
A simple reading of the statute explains why. Section 395.0191(4) explicitly states that it applies to “all applications for appointment and reappointment.” § 395.0191(4), Fla. Stat. (2009). The allegations in this case arise out of the doctor’s application for reappointment. The immunity therefore applies.
The doctor also argues that the statutory immunity does not apply because the Board’s decision was not supported by “good cause” or “valid reasons,” citing Lawnwood Medical Center, Inc. v. Seeger, 990 So.2d 503, 516 (Fla.2008). The doctor then argues the hospital breached the bylaws when it refused to follow the recommendations of its own MEC.
We also find the doctor’s reliance on Seeger misplaced. Seeger focused on whether a special law bestowed “rights, benefits, and advantages” on a private corporation that fell within the term “privilege” used in Article III, Section ll(a)(12), Florida Constitution. Id. at 514. The court held that the statute, which allowed a board to unilaterally amend bylaws, rendered it unconstitutional. Id. at 517-18. Our supreme court did not add a “good cause” or “valid reasons” requirement to all board decisions. It certainly did not address the immunity issue now before us.
Section 395.0191 immunizes the hospital against any action for monetary or injunc-tive relief if it arises out of, or is related to, the appointment or reappointment process absent intentional fraud. Because the doctor’s claims directly challenge the reappointment process, the trial court should have denied the doctor’s request for in-junctive relief.
The court erred in issuing the temporary injunction. We therefore reverse and remand this case for dismissal of the complaint.

Reversed and Remanded.

DAMOORGIAN and GERBER, JJ., concur.

. The hospital also argues the trial court lacked jurisdiction because the doctor failed to exhaust his administrative remedies; and that the doctor failed to establish the requisite elements for entry of an injunction. Because we find the hospital immune from suit, we do not reach these issues.

. The doctor signed the authorization “under protest.”